**Robert Loy DAY, Petitioner,**

v.

**NATIONAL TRANSPORTATION SAFE-TY BOARD and United States of America, Respondent.**

**No. 27055.**

United States Court of Appeals
Fifth Circuit.

Aug. 21, 1969.

Trammell F. Shi, F. R. Raley, Macon, Ga., for petitioner.

Arthur R. Schor, Gen. Counsel, National Transp. Safety Bd., Ramsey Clark, Atty. Gen. of U. S., Morton Hollander, Chief, Appellate Sec., Civil Div., Dept. of Justice, Fritz L. Puls, Gen. Counsel, National Transp. Safety Bd., William D. Ruckelshaus, Asst. Atty. Gen., Washington, D. C., for respondent.

Before BELL and GOLDBERG, Circuit Judges, and ATKINS, District Judge.

ATKINS, District Judge:

This is an appeal from a decision of the National Transportation Safety Board which affirmed the finding of its trial examiner that Robert Loy Day should be denied a pilot's medical certificate. The result of this denial is that appellant, a pilot with over 10,000 hours, can no longer fly. The trial examiner found that Day had a history or clinical diagnosis of myocardial infarction.[1] Regulations of the Board prevent certification of anyone with "established medical history or clinical diagnosis of myocardial infarction." 14 C.F.R. 67.-15(a) (1) (i). We affirm the decision of the National Transportation Safety Board.

[1] A myocardial infarction results from the occlusion of one or more of the blood vessels feeding the tissues of the heart. When the blood vessel is shut down, the tissue dies which has been dependent on that vessel for sustenance. The resultant damage to the heart depends upon the size and location of the occluded vessel and the area of tissue involved.

Appellant presents the following issues for review:

(a) Whether it was proper to place the burden of proof on the petitioner?

(b) Whether the evidence was sufficient to support the Board's action?

(c) Whether 14 C.F.R. 67.15 is valid, not being in conflict with the statutory pattern or being an unconstitutional delegation?

(d) Whether the Board properly refused to enter a default judgment because of the Administrator's late filing of an answer?

■ With respect to the first issue, 14 C.F.R. 421.16 provides, "In proceedings under Section 602(b) of the Act, the burden of proof shall be upon the petitioner." In accordance with this provision the Board here placed the burden of proof on the appellant-petitioner. Appellant contends that this regulation is invalid since it is inconsistent with an applicable section of the Administrative Procedure Act, 5 U.S.C.A. § 566(d) which provides that "except as otherwise provided by statute, the proponent of a rule or order has the burden of proof." Day argues that the Board is here a proponent of an order and that hence the statute is applicable.

In American Trucking Ass'n v. United States, 1952, 344 U.S. 298, 73 S.Ct. 307, 97 L.Ed. 337, 360, the Court held that this section of the Administrative Procedure Act did not apply except to rules or orders where a hearing on the record is required by statute. There is no such requirement in this case. Further, it is inconceivable that Congress would intend that the Government have the burden of proof in every instance of medical certification for pilots in view of the many thousands of licenses granted each year. We find that the burden of proof was correctly placed on the Appellant Day. It is apparent from the following discussion of the sufficiency of the evidence that the placement of the burden was a critical factor in the Board's decision.

■ The general case against appellant's certification is summarized by the following exchange between the trial examiner and Dr. Westura, a highly competent cardiologist, one of the physicians who testified concerning Day's condition.

HEARING EXAMINER: On the record. As I understand it, Dr. Westura, your diagnosis of the antero septal myocardial infarction is based entirely upon electrocardiograms which you examined back in 1965 and 1964 and that, in your opinion, hasn't changed in any way, shape or form by the cardiograms you saw today. And that your diagnosis is based upon lack of an r-wave plus an elevation of the St-segment which still exists.

Is that correct?

THE WITNESS: That's correct. And the additional point is that there are—the things that would otherwise cause this change have not been shown to be present.

A common symptom of myocardial infarction is an electrocardiogram which fails to show the emission of r-waves. It is undisputed that appellant's cardiogram readings did not show r-waves. The physicians who testified agreed that a lack of r-waves can be attributed to causes other than a myocardial infarction. However, appellant was unable to prove by the greater weight of the evidence that his lack of r-waves was due to one of these other causes.

Nine physicians testified at the hearing. Generally supporting the view of Dr. Westura that appellant might have suffered from a myocardial infarction were Drs. Sealy and Ireland. Drs. Dupree, Forester and Holden most clearly supported appellant's position. Dr. Dupree initially held the view that appellant had previously suffered from a myocardial infarction, but later changed his mind. He could not say, however, that appellant never had such an infarction. Dr. Forester thought that the cardiogram was insufficient evidence but would not rule out the possibility of a past infarc-

tion. Dr. Holden was not an internist and did not read electrocardiograms. Drs. Stamps and Ellis also testified for the Administrator but their testimony was not based on first hand knowledge of Day's electrocardiogram readings. Dr. Eberle testified for appellant but his testimony was of little value since he had not examined appellant and did not read electrocardiograms.

■ The function of this Court is not to resolve conflicts in the evidence but to determine whether there is evidence to support the Board's findings, Nadiak v. Civil Aeronautics Board, 305 F.2d 588 (5th Cir. 1963), cert. denied, 372 U.S. 913, 83 S.Ct. 729, 9 L.Ed.2d 722 (1963). We conclude that there was such evidence. In sum there was a split in the testimony and appellant was unable to carry his burden and prove that he had not experienced a myocardial infarction.

■ We turn now to the validity of the regulation. 14 C.F.R. 67.15(e) (1) (i) requires the petitioner to show that he has no established medical history or clinical diagnosis of myocardial infarction. 49 U.S.C.A. § 1422 recites: "If the Administrator finds, after investigation, that such person possesses proper qualifications for, and *is physically able* to perform the duties pertaining to, the position for which the airman certificate is sought, he shall issue such certificate * * *." (Emphasis added)

Appellant contends that the words "is physically able" envision the petitioner's present capacity and health. Therefore, any regulation which looks to past "medical history" violates the statute. This argument is insubstantial. Certainly one of the main purposes of the act is to promote air safety. If it can be shown that persons with a medical history of myocardial infarction are more likely to have heart attacks while flying than those who do not have such a history, then it is apparent that the regulation is proper in promoting the safety which was the purpose of the act. "Is physically able" must be read to mean "is free from significant physical risks." [2]

■ The appellant also argues that the statute purportedly authorizing this regulation is an unconstitutional delegation of power to the National Transportation Safety Board in that it allows them, in effect, to take away appellant's license to fly without adequate standards. 49 U.S.C.A. § 1421 provides standards for exercise of the delegated authority. The opening sentence authorizes regulations to "promote safety of flight of civil aircraft in air commerce." When read in conjunction with the above mentioned 49 U.S.C.A. § 1422 we find these standards more than sufficient. See Allegheny Airline v. Cedarhurst, 238 F.2d 812, 816–817 (2nd Cir. 1956).

■ The appellant's last contention is that because the Administrator did not file a timely answer within 20 days (14 C.F.R. 421.18) to the petition for review which was filed with the Board by appellant, he was entitled to a default judgment. The record supports the Board's decision that counsel for the Administrator had concluded that the entire proceeding was being held in abeyance while the Federal Flight Surgeon was reconsidering the denial of appellant's application.

Affirmed.

2. Mr. Day's counsel made it clear that he was not contesting the reasonableness of the regulation on flying which would disqualify those persons who may have sudden incapacitation. It is well known that there is very little second chance given to one who loses control of an aircraft, particularly during critical periods of flight. Any regulation involving physical standards will cause a certain number of people to be deprived of their privilege of flying but abolition of the criteria would cause risk to the public far in excess of any benefit to the individual.